■ Douglas Elliman, LLC, Doing Business as Prudential Douglas Elliman Real Estate, Plaintiff, v Rhona Silver et al., Defendants/Third-Party Plaintiffs-Respondents. Lowe's Home Centers, Inc., Defendant/Third-Party Defendant-Appellant [39 NYS3d 51]—

In an action to recover a real estate broker's commission, the defendant/third-party defendant, Lowe's Home Centers, Inc., appeals from so much of an order of the Supreme Court, Suffolk County (Emerson, J.), dated June 24, 2014, as denied its motion for summary judgment dismissing the third-party complaint.

Ordered that the order is affirmed insofar as appealed from, with costs.

In February 2007, the defendant/third-party defendant, Lowe's Home Centers, Inc. (hereinafter Lowe's), entered into a contract of sale for the purchase of certain commercial property with the defendants/third-party plaintiffs Rhobar, Inc., Acklerly Associates, LLC, and Rhobar Development Associates, LLC (hereinafter collectively the sellers). Shortly thereafter, the plaintiff notified the parties that it was entitled to a brokerage commission on the sale. The sale closed in June 2007, and no brokerage commission was paid.

The plaintiff commenced an action to recover a brokerage commission against the sellers and Rhona Silver, an individual with ownership interests in the sellers (hereinafter collectively the Silver defendants), and Lowe's. Prior to any trial in the action, Lowe's entered into a settlement agreement and a stipulation of discontinuance with the plaintiff, and the plaintiff released Lowe's from the action. In the settlement agreement, the plaintiff agreed that Lowe's was aware of the subject property as a potential site for its acquisition before the plaintiff mentioned it to Lowe's, Lowe's never engaged the plaintiff to act as a broker for it with respect to the acquisition of the subject property, and Lowe's at all times had advised the plaintiff that it would not be responsible to the plaintiff for any brokerage commission with respect to the property.

The Silver defendants then commenced a third-party action against Lowe's seeking contractual indemnification in the main action and damages for breach of the contract of sale. Although the contract of sale provided that the sellers shall pay any

broker's fees, the contract also included representations by both Lowe's and the sellers that no brokers were involved in the negotiation of the agreement or were employed by the sellers or Lowe's. In the event that such a representation was untrue or was breached, the contract provided that the offending party shall defend and hold the other party harmless, including attorney's fees, and indemnify against all claims for brokerage fees and other compensation arising by virtue of the acts of the breaching party. The third-party action was severed from the main action for trial.

At the trial in the main action, the Silver defendants contended that the plaintiff was not entitled to a commission because neither they, nor Lowe's, hired the plaintiff. The parties limited the issues to be tried by stipulating to certain facts, including that Lowe's was aware of the subject property as a potential site for its acquisition before the plaintiff mentioned it to Lowe's, Lowe's never engaged the plaintiff to act as a broker for it with respect to the acquisition of the subject property, and Lowe's at all times had advised the plaintiff that it would not be responsible for any brokerage commission with respect to the property. In a special verdict, the jury found that Silver, either individually or on behalf of the other Silver defendants, had employed the plaintiff as a broker for the purpose of procuring a purchaser who was ready, willing, and able to purchase the subject property, and the actions of the plaintiff brought about the sale of the property. The jury awarded the plaintiff a sum representing the value of the brokerage services it provided.

Following the jury verdict in the main action, Lowe's moved for summary judgment dismissing the third-party complaint. In support of its motion, Lowe's submitted, among other documents, the affidavit of Wade D. Laufenberg, who was responsible for the acquisition of sites by Lowe's. In his affidavit, Laufenberg detailed how he first learned of the subject property in July 2004 through Barry Newman, but a deal was not reached at that time. In November 2005, the plaintiff's representatives approached Laufenberg about various sites, including the subject property. One of the plaintiff's representatives informed Laufenberg that Newman was no longer involved. She claimed to have a special relationship with Silver that would facilitate negotiations between Silver and Lowe's. Over the course of three months, Laufenberg submitted three offers by Lowe's through the plaintiff to buy or lease the property, but Silver never responded to the offers and never initiated any communications with Lowe's through the plaintiff. In 2006,

Laufenberg learned that the property was under contract of sale with a developer through a different broker. Eventually, that deal collapsed and, in August 2006, Newman contacted Laufenberg and the two negotiated the subject contract of sale between Lowe's and the sellers. According to Laufenberg, the plaintiff had no involvement with Lowe's and the acquisition of the subject property from January 2006 until the time Lowe's entered into the contract of sale in February 2007. Laufenberg opined in his affidavit that it was clear that the plaintiff never was a broker for Silver.

Notwithstanding Laufenberg's statements, Lowe's argued that it was entitled to summary judgment dismissing the third-party complaint because the stipulations in the settlement agreement it entered into with the plaintiff, the stipulations made by the plaintiff and the Silver defendants in the trial of the main action, and the jury's verdict all had a preclusive effect and collaterally estopped the sellers from establishing in the third-party action that Lowe's had breached the contract of sale by misrepresenting that no brokers were involved in the negotiation of the agreement or were employed by Lowe's. The Supreme Court denied the motion, finding that, while the stipulations absolved Lowe's from liability to the plaintiff, they failed to resolve Lowe's liability to the Silver defendants under the terms of their contract as a matter of law, and the jury's verdict did not address Lowe's liability to the Silver defendants, if any. We affirm.

Collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity" (*Ryan v New York Tel. Co.*, 62 NY2d 494, 500 [1984]; *see Parker v Blauvelt Volunteer Fire Co.*, 93 NY2d 343, 349 [1999]). The doctrine applies only "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action" (*Parker v Blauvelt Volunteer Fire Co.*, 93 NY2d at 349; *see City of New York v Welsbach Elec. Corp.*, 9 NY3d 124, 128 [2007]; *Ryan v New York Tel. Co.*, 62 NY2d at 500-501). "[C]ollateral estoppel effect will only be given to matters actually litigated and determined in a prior action" (*Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 456 [1985] [internal quotation marks omitted]).

Contrary to Lowe's contention, the question of whether Lowe's employed the plaintiff was not actually litigated and determined in the main action. Since Lowe's had settled with

the plaintiff before trial and the third-party action was severed from the main action, the jury was not asked to consider whether Lowe's had employed the plaintiff. Further, "[a]n issue is not actually litigated if, for example, there has been a default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation" (*Kaufman v Eli Lilly & Co.*, 65 NY2d at 456-457). The settlement agreement between Lowe's and the plaintiff cannot bind the Silver defendants, who were not a party to that agreement. As to the stipulation at trial between the plaintiff and the Silver defendants, the doctrine of collateral estoppel is not applicable, since the issues resolved therein were not actually litigated (*see Matter of Halyalkar v Board of Regents of State of N.Y.*, 72 NY2d 261, 267 [1988]; *Kaufman v Eli Lilly & Co.*, 65 NY2d at 456-457; *M.V.B. Collision, Inc. v Rovt*, 101 AD3d 830, 831 [2012]; *Pawling Lake Prop. Owners Assn., Inc. v Greiner*, 72 AD3d 665, 668 [2010]; *North Shore-Long Is. Jewish Health Sys., Inc. v Aetna US Healthcare, Inc.*, 27 AD3d 439, 441 [2006]; *1829 Caton Realty v Caton BMT Assoc.*, 225 AD2d 599 [1996]). In addition, Lowe's failed to demonstrate that the Silver defendants intended for the stipulation to have a binding effect in the third-party action, which had been severed from the main action for trial (*cf. Matter of Susan UU. v Scott VV.*, 119 AD3d 1117, 1120 [2014]). Accordingly, neither the stipulations nor the jury's verdict precludes the Silver defendants from maintaining the third-party action. Since Lowe's submissions otherwise failed to establish, prime facie, its entitlement to judgment as a matter of law, its motion for summary judgment dismissing the third-party complaint was properly denied, regardless of the sufficiency of the papers in opposition (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Balkin, J.P., Dickerson, Cohen and Brathwaite Nelson, JJ., concur.