*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 26, 2015          518595
_____

ALEXANDER S. RUGGIERO,

                 Appellant,

    v

MATTHEW J. MILES et al.,                  MEMORANDUM AND ORDER

                 Defendants,

    and

MORGAN J. VITTENGL,

                 Respondent.
_____


Calendar Date:  January 6, 2015

Before:  Garry, J.P., Egan Jr., Lynch and Clark, JJ.

_____


    LaFave, Wein & Frament, PLLC, Guilderland (Jason A. Frament
of counsel), for appellant.

    Burke, Scolamiero, Mortati & Hurd, LLP, Albany (Judith B.
Aumand of counsel), for respondent.

_____


Clark, J.

    Appeal from an order of the Supreme Court (Chauvin, J.),
entered August 30, 2013 in Saratoga County, which granted
defendant Morgan J. Vittengl's motion for summary judgment
dismissing the complaint and any cross claims against him.

    In July 2009, plaintiff sought out medical treatment after
he developed abdominal pain, vomiting and diarrhea.  As is
relevant here, he visited defendant Malta Medical Care, P.C.
(hereinafter MMC) on July 13 and 15, 2009.  Plaintiff was treated
there by a nurse practitioner, defendant Diane E. Belanger, who

diagnosed him with gastritis possibly brought on by food poisoning.  His symptoms did not improve and, several days later, he was diagnosed by another medical provider with a ruptured appendix that necessitated surgery.

Plaintiff thereafter commenced this medical malpractice action against numerous individuals and entities, including MMC and Belanger.  He further asserted a claim against defendant Morgan J. Vittengl, who served as Belanger's collaborating physician and is the sole shareholder of MMC (see Education Law § 6902 [3]).  Following joinder of issue and discovery, Vittengl moved for summary judgment dismissing the complaint and any cross claims against him.  Supreme Court granted the motion, and plaintiff now appeals.

While we are unpersuaded by plaintiff's contention that the motion should have been denied or held in abeyance pursuant to CPLR 3212 (f), we do agree that the motion should have been denied upon the merits.  Physicians such as Vittengl may be held vicariously liable for the negligent acts of those they "exercise some general authority or control" over, the classic example of which is the "liability of an employer for the acts of its employees within the course of employment" (Kavanaugh v Nussbaum, 71 NY2d 535, 546 [1988]).  Belanger is employed by MMC.  Inasmuch as Vittengl is the sole shareholder of MMC, however, he may nevertheless be held liable for "any negligent or wrongful act or misconduct committed by him or by any person under his direct supervision and control while rendering professional services on behalf of such corporation" (Business Corporation Law § 1505 [a]; see We're Assoc. Co. v Cohen, Stracher & Bloom, 65 NY2d 148, 151 [1985]).  The statute "reflects the common-law rule . . . that a supervisor is liable if he directs or permits tortious conduct by those under his supervision or fails to exercise proper control over them" (Connell v Hayden, 83 AD2d 30, 59 [1981]; accord Wise v Greenwald, 208 AD2d 1141, 1142 [1994]).

Nurse practitioners, such as Belanger, are entitled to engage in "the diagnosis of illness and physical conditions and the performance of therapeutic and corrective measures within a specialty area of practice, in collaboration with a licensed physician qualified to collaborate in the specialty involved,

provided such services are performed in accordance with a written practice agreement and written practice protocols" (Education Law § 6902 [3] [former (a)]; see 8 NYCRR 64.5 [b]).[1]  Belanger was hired by Vittengl, the sole principal at MMC, and she thereafter entered into a written practice agreement with him.  In that agreement, Vittengl agreed to be available for consultation with Belanger and review patient records with her at least once every three months.  Both the practice agreement and Education Law § 6902 (3) further provided that, in the event that a dispute arose with regard to a matter of diagnosis or treatment that was not addressed by written protocols, Vittengl's opinion would prevail.  Contrary to Supreme Court's conclusion, these circumstances amply demonstrate that Belanger was under Vittengl's direct supervision or control (see Yaniv v Taub, 256 AD2d 273, 274 [1998]; Wise v Greenwald, 208 AD2d at 1142).

Therefore, the question turns to whether Vittengl "direct[ed] or permit[ted] tortious conduct by those under his supervision or fail[ed] to exercise proper control over them" such as to permit the imposition of vicarious liability (Connell v Hayden, 83 AD2d at 59; accord Wise v Greenwald, 208 AD2d at 1142; see also Ross v Mandeville, 45 AD3d 755, 757 [2007]).  In that regard, Vittengl had no involvement in Belanger's treatment of plaintiff.  Vittengl further testified that he appropriately supervised Belanger, in that he was always available for consultation and would review charts with her on a regular basis.  Vittengl spent approximately 20 weeks a year on vacation, however, and he agreed that Belanger was "on her own" in treating patients while he was gone.  Vittengl also testified that he only reviewed 30 to 40 charts a year with Belanger, a small proportion of those prepared for the thousands of patients treated at MMC.  This evidence suggests that Vittengl may have provided inadequate supervision, an impression that is shared by a physician who proffered an affidavit in opposition to Vittengl's motion.  That physician opined in no uncertain terms that Belanger committed malpractice in her examination and treatment of plaintiff and

_____

[1]  Education Law § 6902 (3) was amended as of January 1, 2015, but the relevant language of the statute remains in place (see L 2014, ch 56, part D, §§ 2, 3).

that, had she been properly supervised by Vittengl, her failings would have been corrected well before plaintiff presented as a patient.  These circumstances are sufficient to raise a question of fact as to whether Vittengl is liable and, thus, Supreme Court erred in granting his motion for summary judgment (see Wise v Greenwald, 208 AD2d at 1142).

Garry, J.P., Egan Jr. and Lynch, JJ., concur.

ORDERED that the order is reversed, on the law, with costs, and motion denied.

ENTER:

Robert D. Mayberger
Clerk of the Court